IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| BRET A. SCHROEDER, | ) | CASE NO. BK08-40711-TLS |
| | ) | |
| Debtor(s). | ) | CH. 13 |

## ORDER

Hearing was held in Lincoln, Nebraska, on September 2, 2009, on the debtor's motion for sanctions for violation of the automatic stay by the Nebraska Department of Health and Human Services, Division of Children and Family Services (Fil. #47). David Lepant appeared for the debtor and Susan Buettner appeared for the Nebraska Department of Health and Human Services. The parties have filed post-hearing briefs, so the matter is now ready for decision.

The motion is granted.

The debtor filed his bankruptcy petition on March 31, 2008. His debts included a priority claim for $7,892.00 in past-due child support. His attorney filed a claim on behalf of the debtor's former wife for that debt. His Chapter 13 plan, which was confirmed on July 22, 2008, proposes to pay $154.00 per month on that arrearage. Those payments have been and are being made.

In July 2009, the debtor filed the motion for sanctions at issue here because the Division of Children and Family Services of the Nebraska Department of Health and Human Services ("DHHS") sent the debtor two letters, in April and June, notifying him that he was approximately $8,000.00 behind on his child support. The first letter warned him that if he did not reduce the balance due to less than $500.00, he would be reported to the credit bureaus. The debtor promptly brought this letter to his attorney's attention. His attorney contacted a local child support enforcement staff member to request the cessation of such correspondence because the debtor is paying the debt through his bankruptcy plan. A DHHS child support enforcement operations specialist responded that "[b]eing in an active bankruptcy does not prohibit [us] from submitting past due payors to [consumer credit reporting agencies]." Debtor's counsel replied, agreeing with that statement, but warning that correspondence to debtors threatening action if they do not pay is an attempt to collect a debt and violates the automatic stay.

DHHS then sent the second letter to the debtor, conveying the State of Nebraska's intention to recoup the amount due via interception of monies owed him by the state and federal governments, including tax refunds. He brought that letter to the attention of his counsel, who filed this motion for sanctions for violation of the automatic stay.[1] He seeks $750.00 for attorney's fees and $750.00 in punitive damages, plus an injunction against further DHHS contact with the debtor.

---

[1] The motion is brought pursuant to 11 U.S.C. § 362(k)(1): "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

On a motion for sanctions for violation of the automatic stay, the burden of proof is on the debtor to establish by a preponderance of the evidence that a violation occurred, the violation was committed willfully, and the violation caused actual damages. *Westman v. Andersohn (In re Westman)*, 300 B.R. 338, 342 (Bankr. D. Minn. 2003). "A willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition." *Knaus v. Concordia Lumber Co., Inc. (In re Knaus)*, 889 F.2d 773, 775 (8th Cir. 1989). Intent is irrelevant. *Preston v. GMPQ, LLC (In re Preston)*, 395 B.R. 658, 663 (Bankr. W.D. Mo. 2008).

The State asserts that it is immune under the Eleventh Amendment[2] of the United States Constitution because it has not submitted to this court's jurisdiction.

The first issue to address is whether the automatic stay of 11 U.S.C. § 362 prohibits the action taken by the State. If so, then the issue of sovereign immunity will be addressed.

The automatic stay of § 362(a) unequivocally protects a debtor and the debtor's property from any attempts – judicial or otherwise – to collect debts during the bankruptcy process. There are a handful of exceptions to this; those having to do with the collection of child support[3] are found

---

[2]"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

It is well established that "[w]hile the amendment by its terms does not bar suits against a State by its own citizens, [the United States Supreme] Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

[3]Child support falls within the bankruptcy term "domestic support obligation," defined at § 101(14A):

> (14A) The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is —
> (A) owed to or recoverable by —
>   (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>   (ii) a governmental unit;
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of —

(continued...)

at § 362(b)(2)(B), (C), (E), and (F):

> (b) The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay —
>     (2) under subsection (a) —
>       . . .
>       (B) of the collection of a domestic support obligation from property that is not property of the estate;
>       (C) with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute;
>       . . .
>       (E) of the reporting of overdue support owed by a parent to any consumer reporting agency as specified in section 466(a)(7) of the Social Security Act;
>       (F) of the interception of a tax refund, as specified in sections 464 and 466(a)(3) of the Social Security Act or under an analogous State law[.]

The facts of this case do not implicate subparagraph (C) because child support payments withheld from the debtor's income are not at issue here. The letters sent by DHHS threatened to take the actions permitted in subparagraphs (E) and (F), but those actions are not at issue here. Thus, the remaining applicable stay exception under which DHHS's actions could fall is subparagraph (B), regarding collection of child support from property that is not property of the bankruptcy estate.

"Property of the bankruptcy estate" is defined in § 541 and, because this is a Chapter 13 case, § 1306. Filing a bankruptcy petition creates an estate that includes all of the debtor's legal and equitable interests in property as of the commencement of the case. Under Chapter 13, property of the estate also includes post-petition property and earnings:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title —
>     (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and

---

[3](...continued)
    (i) a separation agreement, divorce decree, or property settlement agreement;
    (ii) an order of a court of record; or
    (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
  (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.
> (b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

§ 1306. *See also* § 1327(b) ("*Except as otherwise provided in the plan or the order confirming the plan*, the confirmation of a plan vests all of the property of the estate in the debtor.") (emphasis added).

In this case, the debtor's plan expressly provides that the property of the estate, including his current and future income, will not vest in the debtor until a discharge is issued. *See* Chapter 13 Plan, ¶ 10(B) (Fil. #3). Accordingly, the stay exception in § 362(b)(2)(B) is inapplicable here.[4]

The letters sent to the debtor by DHHS purport only to notify him of the consequences (reporting to credit agencies and interception of tax refunds) of the delinquent status of his child support account. However, the first letter also endeavors to collect money from him by declaring that if he pays down the past-due amount, the State will not report the account to the credit bureaus. This effort to collect a pre-petition debt violates the spirit and substance of § 362(a).

In addition, this debtor is operating under a confirmed Chapter 13 plan. The plan calls for child support arrearages to be paid to the debtor's former wife via monthly payments of $154.00 after the debtor's attorney fees and costs are paid in full. The terms of a confirmed plan bind the debtor and each creditor, regardless of whether the creditor's claim is provided for in the plan. § 1327(a). This section also prevents DHHS, on behalf of the creditor, from attempting to collect the pre-petition arrearages other than through the monthly plan distributions.

The debtor has therefore met his burden of proof establishing that DHHS violated the automatic stay. The next question is whether the violation was willful. As noted above, a willful violation involves a deliberate act by the creditor with knowledge of the bankruptcy petition. The State has not suggested here that the letters to the debtor were inadvertently sent, nor does it argue that it was not aware of the debtor's bankruptcy case. Accordingly, the facts of the case require a finding in favor of the debtor that DHHS's violation of the automatic stay was willful. The debtor has submitted affidavit evidence that he has incurred attorney's fees to deal with this matter, which are actual damages caused by the violation.

The focus then becomes whether the State is subject to a monetary judgment by the Bankruptcy Court. The Bankruptcy Code contains a section expressly waiving states' sovereign immunity:

> § 106. Waiver of sovereign immunity
> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity

---

[4] It is also important to note that the stay under § 362(a) of actions against property of the bankruptcy estate continues until the property is no longer property of the estate. § 362(c)(1).

-4-

is abrogated as to a governmental unit[5] to the extent set forth in this section with respect to the following:

(1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, [1] 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412 (d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

This seemingly simple and straightforward section of the Code has caused enormous consternation among Article III courts evaluating whether that provision is constitutional. The most recent United States Supreme Court pronouncement occurred in 2006 in the case of *Central Virginia Community College v. Katz*, 546 U.S. 356 (2006).[6] In its immunity argument, the State of Nebraska

---

[5]The Code defines "governmental unit" at § 101(27):

The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

[6]A leading bankruptcy commentator describes the current status of § 106 thusly:

Section 106 stands as a declaration of the extent to which Congress has determined that states should be treated the same as other creditors in bankruptcy. Therefore, insofar as state governments are concerned, section 106 must be consulted to determine the circumstances under which Congress has authorized states to be sued in bankruptcy. The restrictions that section 106 places on such suits must be adhered to because, even though the states surrendered their immunity, Congress has the

(continued...)

seems to concede, first, that *Katz* holds Congress was acting within the scope of its power when it abrogated sovereign immunity in § 106 because the states acquiesced to the courts' jurisdiction and gave up their immunity when they ratified the Bankruptcy Clause[7] of the Constitution,[8] and second, that damages for violating the automatic stay are within the scope of the court's authority over the states. However, the State argues that it is not a creditor and it has not submitted to the court's jurisdiction by filing a claim in the case. Regrettably for the State, this argument fails to account for DHHS's function as an enforcement and collection agent for the child support creditor and the language of § 362(a) that prohibits "all entities" from taking any steps to enforce a pre-petition judgment, collect a pre-petition claim, or attempt to obtain possession of estate property. As explained below, sovereign immunity does not apply to the State in this matter.

The Supreme Court made clear that not "every law labeled a 'bankruptcy' law could, consistent with the Bankruptcy Clause, properly impinge upon state sovereign immunity," *Katz*, 546 U.S. at 378, n.15, but rather focused on in rem exercises of the bankruptcy court's jurisdiction. *Katz* involved preferential transfers; the Supreme Court did not itemize any other types of bankruptcy proceedings to which sovereign immunity does or does not apply, so courts have sketched the outline of the grant of power on a case-by-case basis.

In determining that motions for contempt and sanctions against a state for violating the automatic stay fall within the scope of proceedings for which states have subordinated their immunity, the Eleventh Circuit Court of Appeals said:

> A bankruptcy court's authority to issue compulsory orders to facilitate the administration and distribution of the res flows from that jurisdiction and, as such, does not implicate a State's sovereignty in the same way as other kinds of jurisdiction, even where the orders take the form of money damage awards against a State. While motions for contempt and seeking sanctions that include attorney's fees and costs for violating the automatic stay may resemble money damage lawsuits in form, it is their function that is critical, and their function is to facilitate the in rem proceedings that form the foundation of bankruptcy.

---

[6](...continued)
legislative authority to treat them more favorably than other creditors.

2 *Collier on Bankruptcy* ¶ 106.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2009) (footnotes omitted).

[7]U.S. Const., art. 1, § 8, cl. 4: "The Congress shall have Power . . . To establish . . . uniform Laws on the subject of Bankruptcies throughout the United States."

[8]"Congress may, at its option, either treat States in the same way as other creditors insofar as concerns 'Laws on the subject of Bankruptcies' or exempt them from operation of such laws. Its power to do so arises from the Bankruptcy Clause itself; the relevant 'abrogation' is the one effected in the plan of the Convention, not by statute." *Katz*, 546 U.S. at 379.

*Florida Dep't of Revenue v. Omine (In re Omine)*, 485 F.3d 1305, 1313 (11th Cir. 2007) (opinion withdrawn due to settlement, 2007 WL 6813797 (June 26, 2007)). The Eleventh Circuit held that "the bankruptcy court's ancillary order to enforce an automatic stay, which is one of the fundamental debtor protections provided by the bankruptcy laws, operates free and clear of the Florida DOR's claim of sovereign immunity." 485 F.3d at 1314.

The rationale explained by the Eleventh Circuit squarely applies in this case. The State's argument that it is protected from the imposition of sanctions here by sovereign immunity is unavailing because its conduct plainly falls within this court's authority to administer the bankruptcy res, regardless of the fact that the State did not otherwise voluntarily submit to the court's jurisdiction in this case. At a minimum, DHHS is subject to a judgment for the actual damages its conduct caused the debtor. The next question to be addressed is whether it is subject to the punitive damages requested by the debtor.

Subsection 106(a)(3) by its terms prohibits an award of punitive damages against a governmental unit. As the *Omine* court explained,

> Given that the result [of applying Congress's limitations on punitive damage awards] is not only not "absurd," but aligned with Congress's intent, it is difficult to escape the application of a plain reading of § 106(a)(3) that applies its award limitations to a bankruptcy court order issued pursuant to §§ 105 or 362(h). Although § 106(a)(1)'s abrogation was unnecessary now that the Court has clarified that the States acquiesced in a subordination of whatever sovereign immunity they had through the Constitutional Convention, we do not read *Katz* to render § 106(a)(3)'s limitations unconstitutional or inapplicable.

485 F.3d at 1319.

For this reason, the debtor's request for $750.00 in punitive damages must be denied.

Congress, however, limited the award of attorney's fees in § 106(a)(3) to the amounts that would be allowed under the Equal Access to Justice Act. 28 U.S.C. § 2412(d)(2)(A).[9] That section

---

[9]§ 2412. Costs and fees
    (d)(2) For the purposes of this subsection —
        (A) "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that
            (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and

(continued...)

establishes the maximum allowable hourly rate at $125.00 (subject to exception in special circumstances). The evidence in support of the current motion includes a bill for professional services in the flat amount of $750.00 for preparation and filing of the motion and affidavit and appearance at the court hearing. There is no way to ascertain from this record whether the fee request comports with the statutory requirement. Therefore, the debtor or his counsel will be given the opportunity to submit supplemental evidence on the fee award issue. The supplemental evidence may include the post-hearing fees and expenses incurred in this matter. After that information is received, a judgment will be entered in favor of the debtor and against DHHS for the actual damages incurred by the debtor due to DHHS's violation of the automatic stay.

IT IS ORDERED: The debtor's motion for sanctions for violation of the automatic stay by the Nebraska Department of Health and Human Services, Division of Children and Family Services (Fil. #47) is granted. The debtor shall submit supplemental evidence regarding his actual damages on or before November 10, 2009, after which a judgment in his favor will be entered.

DATED: October 23, 2009.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *David Lepant
    Susan Buettner
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.

---

[9](...continued)
(ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.)